## MOORE v. STEGEMAN.

1. PAYMENT—EVIDENCE—SUFFICIENCY.
   In suit to set aside deed and establish lien, finding of cour. below that plaintiff and wife agreed to accept certain property in full payment of amount owing, *held*, not supported by evidence.

2. SAME—SET-OFF AND RECOUPMENT—EVIDENCE—SUFFICIENCY.
   Allowance of set-off to defendant was not justified where r is claim that money paid by his brothers to plaintiff was, intended to discharge defendant's debt is not established by evidence, but inference therefrom is that it was intended for plaintiff's wife as part of her share of her father's property.

Appeal from Allegan; Sample (George W.), J., presiding. Submitted June 17, 1930. (Docket No. 91, Calendar No. 34,848.) Decided October 3, 1930. Rehearing denied December 2, 1930.

Bill by Myron B. Moore against Frank L. Stegeman and others to set aside a deed, establish a lien on property, and sell a mortgage. Cross-bill by defendants for an accounting. From a decree allowing claim of defendants as a set-off to plaintiff's claim, plaintiff appeals. Modified.

*Knappen, Uhl & Bryant* and *Ethol W. Stone,* for plaintiff.

*Leo W. Hoffman* and *Clare E. Hoffman* (*Carl E. Hoffman,* of counsel), for defendants.

McDonald, J. In April, 1926, the defendant Frank L. Stegeman borrowed $5,000 from the plaintiff to complete his payments on the purchase of a residence in the city of Allegan, Michigan. He gave as security for the loan an assignment of a mortgage for $4,000 which he held against a farm belonging to his brother, Charles Stegeman, and agreed he would retain the title to the residence in his own name so that the plaintiff might look to it as additional security. The loan was evidenced by a note for $5,000 payable $100 or more per month commencing May 12, 1926. After paying $150, Stegeman defaulted. In March, 1927, he and his wife, Clara Stegeman, joined in a conveyance of the residence to Margaret Stegeman Maentz, their daughter. When the plaintiff learned of the transfer, he filed this bill to set aside the deed, to establish a lien on the residence property, and for a decree of sale of the $4,000 mortgage which he held as security.

In their answer, the defendants allege that in July, 1919, the plaintiff represented Frank Stegeman in a controversy with his brothers, Charles and John, over a claim he was making for an additional interest in their father's estate; that plaintiff secured a settlement in which he was paid $3,600 in cash and a note payable to Frank for $900; that he gave Frank the note, but kept the $3,600; that Frank was unaware of the cash payment; that when he learned about it he demanded that he be given credit for $3,600 on the $5,000 loan; that plaintiff refused and Frank declined to make further payments until such credit was given. On the hearing, the defendants insisted on their right to set off this $3,600 against the plaintiff's claim. The trial court agreed with them, entered a decree accordingly, and gave the plaintiff a lien on the residence property for the balance. From this decree the plaintiff has appealed.

The controversy had its origin in the settlement of the estate of John Stegeman, Sr. He died in 1911, leaving his widow and six children, John, Charles, Albert, Frank, Hettie, and Isabel. The major portion of his estate consisted of two farms. Before his death, he deeded one of these farms to John and the other to Charles, but required John to give a mortgage of $4,000 on his farm to Albert, and Charles to give a mortgage in the same amount to Frank. These mortgages bore no interest and were not payable until after the widow's death. No provision was made for the two daughters. The plaintiff's interest in the family affairs arose from the fact of his marriage with one of the daughters, Isabel. The daughters insisted that they should have as much from the estate as Frank and Albert who had each received $4,000. Charles and John,

who had the farms, agreed to give them that amount. Hettie received her $4,000. In settling with Isabel, Charles gave his note for $1,000, which was subsequently paid. Albert owed the estate about $3,500 for a note which his father had indorsed and which the estate was compelled to pay. For this reason, he was induced by John and Charles to assume the payment of the $3,000 balance due to Isabel. Albert owned some northern timber lands which were thought to be of sufficient value to pay her. So it was arranged that Albert would give three notes of $1,000 each to Frank with a deed of the timber lands to secure their payment and Frank was to give Isabel his note for $3,000 secured by an assignment of the $4,000 mortgage which he held against the farm belonging to Charles. This program was carried out. Several years went by. Albert and Frank allowed the timber land to be sold for taxes. They were advised by counsel to file a bill to redeem from the sale. They were unable to pay money necessary for a tender and for expenses of the suit. The plaintiff was appealed to. He advanced various amounts and received a deed of the timber land from Frank as security. The suit was successful. The land was later sold and the plaintiff credited the net proceeds amounting to $1,195.63 on Frank's $3,000 note to Isabel. The defendants claim that, when the boys settled with their sister, Isabel, it was agreed that she would accept the timber land as payment in full for the $3,000 which remained due after Charles had given his $1,000 note. The trial court so found. We disagree with his findings.

The testimony shows that Mr. Moore, acting for his wife, refused to accept the northern lands unless she was given additional security to pay any balance in the event that a sale of these lands did not

produce a sufficient amount to pay the entire $3,000. For that purpose, Frank assigned to her the mortgage of $4,000. He testified on direct examination:

"Moore said he would be glad to take that, those 80 acres up there, and three eighties, that he wanted to be secured on it, and he thought that would be perfectly all right, to make up his balance of $3,000, but in order to be doubly sure about it he wanted an additional security, and asked me to give my mortgage as collateral.

"*Q.* Did you do that?

"*A.* Yes, sir."

Again on cross-examination he said:

"*Q.* But you expected that this land that was in Albert's name and your name up there was going to be applied on this settlement with your sister, Isabel, Mrs. Moore?

"*A.* Yes, sir.

"*Q.* * * * Although you testified on your direct examination, that Mr. Moore said in order to make sure of it, while he was willing to take a lien on the land up north, he was holding this mortgage as security and these other notes?

"*A.* Yes."

If Albert's timber lands were to be taken by Mrs. Moore in full payment of the $3,000, why was not the whole transaction closed by a deed direct from him to her? Why was it necessary for him to deed them to Frank and for Frank to give Mrs. Moore his note for $3,000 and an assignment of his $4,000 mortgage as security for its payment? They were deeded to Frank in 1911 and title remained in his name until February 3, 1917, at which time they were quitclaimed to the plaintiff. The instrument which was signed by both Frank and Albert recited:

"Whereas, Myron B. Moore has heretofore loaned to Frank L. and Albert A. Stegeman various sums

of money for the purchase of certain lands in Chippewa county, and has also loaned them certain additional sums of money incident to the redemption of certain tax sales upon the following described lands, and the said Frank L. Stegeman and Albert A. Stegeman had heretofore agreed to repay him said sums out of the proceeds of the sale of the timber from said lands; and in contemplation of said timber sales, the said Myron B. Moore has advanced to the said Frank L. Stegeman large sums of money, the repayment of which was to have been made from said sale, and the undersigned are indebted to Myron B. Moore in the sum of $1,100 thereon, etc.''

The total amount received by the plaintiff on sale of the lands was $1,642.85. Against this was debited $447.22, leaving a balance of $1,195.63 which was applied as partial payment of the $3,000 owing to Isabel Moore. In view of all the facts stated, we are unable to find anything to support the finding of the trial court that the plaintiff and his wife agreed to accept the northern property in full payment of the $3,000 which the brothers agreed to pay her.

The remaining question relates to the settlement which the plaintiff had with John and Charles in which they paid him $3,600. The defendants say this $3,600 was paid for Frank. The plaintiff says it was paid to settle an agreed balance of the $3,600 owing to Mrs. Moore. This settlement is evidenced by a receipt for the $3,600 and a note of $900 payable to Frank. The receipt is signed by the plaintiff for his wife, by Frank and by others and purports to be a settlement in full for all claims which they had against the estate of John Stegeman, deceased. Inasmuch as Isabel Moore had received $1,195.63 only on the $3,000 which they agreed to pay her, it is highly improbable that her husband, who is an at-

torney, receipted in full for her if it was not intended she should have the $3,600. Frank knew he had received only $900 in addition to the $4,000 mortgage, yet he receipted in full and received from Mrs. Moore a reassignment of the $4,000 mortgage which he had put up as collateral to secure the payment of the $3,000. Seven years later, after he had become indebted to Mr. Moore on a loan of $5,000, he suddenly discovered that Moore had retained $3,600 belonging to him. He testified that in a conversation with his brothers—

"I discovered that they had paid $3,600 in addition to the $900, and I didn't believe it at first, didn't see why they should."

They had already paid him $4,000, and we do not believe they intended to give him $4,500 more. He was satisfied with $900, and they could have settled with him for that amount. Moreover, there appears to be no reason why he should be favored with a portion of the estate so much beyond that received by the other heirs. In our view of the evidence, the trial court was wrong in permitting the defendants to set off the $3,600 against the $5,000 loan.

The defendants have not appealed from the decree establishing a lien on the Allegan residence. No disposition was made of the plaintiff's claim of right to a sale of the mortgage. In the decree which will be entered in this court, provision may be made for a sale of the mortgage providing there is a deficiency after a sale of the residence.

A decree will be entered in this court in accordance with this opinion. The plaintiff will have costs.

WIEST, C. J., and BUTZEL, CLARK, POTTER, SHARPE, NORTH, and FEAD, JJ., concurred.